# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

2910 GEORGIA AVENUE LLC,

  Plaintiff,

    v.

DISTRICT OF COLUMBIA, *et al.*,

  Defendants.

**Civil Action No. 12-1993 (CKK)**

## MEMORANDUM OPINION
(September 30, 2013)

Plaintiff 2910 Georgia Avenue LLC filed suit against the District of Columbia, Mayor Vincent C. Gray, and Michael P. Kelly in his official capacity as Director for the Department of Housing and Community Development ("DHCD"), alleging the District of Columbia's Inclusionary Zoning Program constitutes an unconstitutional taking and violates the Plaintiff's substantive due process and equal protection rights. Presently before the Court is the Defendants' [12] Motion to Dismiss. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record for purposes of this motion, the Court finds the Plaintiff's challenge to the inclusionary zoning covenant is ripe, but the claim with respect to the inclusionary zoning program at large is not ripe. Moreover, the Plaintiff has sufficiently alleged a total taking of its property, and factual disputes preclude the Court from ruling on the remainder of the Defendants' arguments. Accordingly, the Defendants' motion is GRANTED IN PART and DENIED IN PART. The Defendants' motion is GRANTED with respect to the Plaintiff's takings claim against the set-aside requirement of the inclusionary zoning program, but is

---

[1] Defs.' Mot. to Dismiss, ECF No. [12]; Pl.'s Opp'n, ECF No. [14]; Defs.' Reply, ECF No. [16]; Pl.'s Surreply, ECF No. [18]; Pl.'s Notice of Supp. Authority, ECF No. [19].

otherwise DENIED.

## I. BACKGROUND

*A.     Regulatory Framework*

The District of Columbia enacted the "Inclusionary Zoning Program," with the intent to "increase[e] the amount and expanding the geographic distribution of adequate, affordable housing available to current and future residents" by requiring new residential developments (or substantial additions to existing developments) to set aside a certain number of units for sale or lease to eligible low- and moderate-income households at below-market cost. D.C. Mun. Regs. tit. 11, § 2600.1. The laws and regulations governing the inclusionary zoning, or "IZ" program, are codified in three parts: (1) the Inclusionary Zoning Act, D.C. Code §§ 6-1041 *et seq*.; (2) the Inclusionary Zoning Regulations administered by the Zoning Commission, D.C. Mun. Regs. tit. 11, §§ 2600.1 *et seq.*; and (3) the Inclusionary Zoning Implementation regulations administered by the DHCD, D.C. Mun. Regs. tit. 14, §§ 2200 *et seq.* In the event of a conflict between the implementing regulations, the Zoning Commission regulations, and the Inclusionary Zoning Act, "the most stringent provision shall apply." D.C. Mun. Regs. tit. 14, § 2200.11.

The Zoning Commission regulations, effective August 14, 2009, "establish the minimum obligations of property owners applying for building permits or certificates of occupancy under an Inclusionary Zoning Program." D.C. Mun. Regs. tit. 11, § 2600.2. In relevant part, the regulations require a developer to "devote the greater of 10% of the gross floor area being devoted to residential use or 75% of the bonus density being utilized for inclusionary units." *Id.* § 2603.1. Subject to certain exceptions, the set-aside units may only be sold or leased to persons authorized by the Mayor at a price or rent no greater that the maximum set by the Mayor. D.C. Mun. Regs. tit. 14, § 2200.4; *see id.* §§2207-14 (outlining procedures for setting maximum sale

prices and selecting eligible households). "Bonus density" allows developments subject to the IZ program to "construct up to twenty percent (20%) more gross floor area than permitted as a matter of right." D.C. Mun. Regs. tit. 11, § 2604.1; *see id.* §§ 2604.2, 2604.3 (listing the modifications to height and lot occupancy permitted under the bonus density provision). "The Board of Zoning Adjustment is authorized to permit some or all of the set-aside requirements of § 2603 to be constructed off-site upon proof, based upon a specific economic analysis, that compliance on-site would impose an economic hardship." *Id.* § 2607.1. If the Board denies an application for off-site construction, the developer may appeal to the Board for partial or complete relief from the set-aside requirement "upon a showing that compliance (whether on site, offsite or a combination thereof) would deny the applicant economically viable use of its land." *Id.* § 2606.1.

"No building permit shall be issued for an Inclusionary Development unless the Mayor approves a Certificate of Inclusionary Zoning Compliance and a covenant signed by the Owner of the Inclusionary Development." D.C. Mun. Regs. tit. 14, § 2200.5(a). The "covenant of inclusionary development" must include, among other things:

> A provision requiring that the present and all future Owners of a For Sale Inclusionary Development shall construct and maintain Inclusionary Units at such affordability levels and in such number, and square footage as indicated on the Certificate of Inclusionary Zoning Compliance and shall sell each Inclusionary Unit in accordance with the Inclusionary Zoning Program and the Certificate of Inclusionary Zoning Compliance;
>
> A provision binding all assignees, mortgagees, purchasers, and other successors in interest to the Inclusionary Development Covenant; and
>
> A provision providing for the release or extinguishment of the Inclusionary Development Covenant only upon the reasonable approval of the Department of Housing and Community Development Inclusionary Zoning Administrator.
>
> A provision requiring that the sale or resale of an Inclusionary Unit shall be only to a Household selected by the [DHCD] or otherwise authorized by this Chapter,

>at a price that does not exceed the Maximum Resale Price established in accordance with § 2218.

*Id.* § 2204.1. The DHCD may waive the inclusionary development covenant and any other provision of chapter 22 of title 14 of the D.C. municipal regulations if (1) the developer is participating in a District of Columbia or federal program to provide affordable housing to low or moderate-income households; (b) "[t]he waived provision is not required by the Zoning Commission's Inclusionary Zoning Regulations or the Inclusionary Zoning Act"; and (c) application of the provision is "burdensome when combined with other . . . regulations or standards, the goal of the provision is adequately addressed by other . . . regulations or standards, or waiver of the provision is in the best interests of the District." *Id.* § 2223.1.

### B. Factual Background

Plaintiff purchased the property at 2910 Georgia Avenue, N.W., from Howard University in 2009, intending to construct a twenty-two unit condominium building. Compl., ECF No. [1], ¶ 19. Zoning approval was granted in March 2010, but approval was subsequently revoked so as to require the Plaintiff to comply with the IZ program. *Id.* ¶ 20. The Plaintiff's development was the first condominium development in the District subject to the IZ program. *Id.* The Plaintiff did not redesign the development to incorporate the bonus density, and instead set aside two units for sale under the IZ program. *Id.* ¶ 21. The Plaintiff executed the inclusionary development covenant on May 20, 2010, and obtained a certificate of zoning compliance in June 2010. *Id.*

DHCD began marketing the set-aside units in May 2011. Compl. ¶ 22. In June and again in August 2011, DHCD conducted lotteries to select households eligible to purchase the units, but neither lottery led to the sale of either unit. *Id.* ¶¶ 22-23. DHCD subsequently opened registration for an alternative selection procedure, but none of the potential candidates identified

through the alternative were able to purchase either unit. *Id.* ¶ 26. The Plaintiff alleges that mortgage lenders are unwilling to offer loans to households seeking to purchase the units because the inclusionary development covenant substantially restricts the lender's ability to foreclose on and resell the properties if the purchaser defaults on the mortgage. *Id.* ¶ 24. To the Court's knowledge, neither of the set-aside units has been sold to date. By contrast, the twenty other units in the development sold for market rates between $225,000 and $404,000 within four months. *Id.* ¶ 27.

Art Linde, the managing member of the Plaintiff, contacted DHCD in December 2011 to request relief from the IZ program. Compl. ¶ 28. Mr. Linde suggested that pursuant to section 2204.1(d) of title 14 of the D.C. Municipal regulations, the DHCD administrator for the IZ program could waive the inclusionary zoning covenant. *Id.* ¶ 29. DHCD responded that this provision only allows for the release of the covenant "in the event of demolition or if the IZ Covenant needs to be corrected, for example. Administrative Regulations do not give DHCD the authority to exempt a project from the IZ program." Compl., Ex. B.

Recognizing the flaws in the inclusionary zoning covenant regulations, in November 2012, the Zoning Commission adopted emergency rulemaking providing for the automatic termination of affordable housing controls (i.e., application of the IZ program) if title to the mortgaged property is transferred by foreclosure or deed-in-lieu of foreclosure, or if the mortgage is assigned to the Department of Housing and Urban Development. Compl., Ex. C at 2. The rulemaking further authorized the Mayor or District of Columbia Housing Authority to acquire title to any inclusionary unit if title to that unit is at risk of foreclosure. *Id.* However, it appears the emergency rulemaking does not affect the inclusionary zoning covenant that currently binds the units set aside by the Plaintiff. Compl. ¶ 38. Moreover, despite the

emergency rulemaking and a third lottery in November 2012, the Plaintiff alleges that no qualified candidates have expressed interest and ability to purchase either of the two units at their current IZ Program pricing, "which is discounted roughly 50% below market." *Id.* ¶ 33.

The Plaintiff filed suit on December 13, 2012. Count I of the Complaint alleges a claim for just compensation under the takings clause of the Fifth Amended pursuant to 42 U.S.C. § 1983. Compl. ¶¶ 56-73. This claim alleges in the alternative that the IZ program constitutes an unconstitutional private use taking. *Id.* ¶ 74. Count II alleges that the way in which the District has administered the IZ Program with respect to the Plaintiff's set-aside units deprived the Plaintiff of substantive due process and equal protection in violation of the Fifth Amendment. *Id.* ¶¶ 75-79. Count III seeks a declaratory judgment that the IZ Program is unconstitutional, that the Defendants, acting under color of state law, deprived the Plaintiff of rights guaranteed by the United States Constitution, and that the Plaintiff is entitled to compensation. *Id.* ¶¶ 80-84.

## II. LEGAL STANDARD

### A. *Motion to Dismiss for Lack of Jurisdiction*

The Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds the Plaintiff's claims are not ripe, depriving the Court of subject matter jurisdiction. To survive a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction over its claim. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007). In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted). "At the motion to dismiss stage, counseled complaints, as

well as pro se complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (citations omitted).

    B.  *Motion to Dismiss for Failure to State a Claim*

The Defendants also move to dismiss the Complaint on the grounds the Plaintiff failed to state a takings claim. Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by [the parties]." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F.Supp.2d 117, 119 (D.D.C. 2011) (citations omitted).

7

## III. DISCUSSION

*A.     Ripeness*

Initially, the Defendants move to dismiss the Complaint on the grounds that the Plaintiff's claims are not ripe. The ripeness doctrine is "designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (citation omitted). "[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cty. Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 186 (1985)). Relying on *Williamson County*, the Defendants argue that the Plaintiff's claims are not ripe unless and until the Plaintiff appeals to the Board of Zoning Adjustments for exemption from the IZ Program pursuant to title 11 section 2606.1 of the D.C. municipal regulations.

As a threshold matter, the Court notes that the Plaintiff's due process/equal protection claim alleges violations of the Plaintiff's rights arising out of the administration of the IZ program by the DHCD apart from the underlying regulations, thus the Defendants' ripeness arguments do not apply to Count II of the Complaint. *Rumber v. District of Columbia*, 487 F.3d 941, 944-45 (D.C. Cir. 2007) (noting courts have "recognized that *bona fide* equal protection claims arising from land use decisions may be made independently of a takings claim and not be subject to *Williamson County* ripeness requirements").

The Plaintiff suggests the ripeness requirements set forth in *Williamson County* does not apply to the Plaintiff's takings claim because the Plaintiff alleges a private taking, otherwise known as a violation of the "public use" clause. The Fifth Amendment to the Constitution provides, in relevant part that "[n]o person shall . . . be deprived of . . . property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. "The Fifth Amendment thus prohibits takings without just compensation and takings for a private purpose. A taking for a private purpose is unconstitutional even if the government provides just compensation." *Rumber*, 487 F.3d at 944 (citing *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 241 (1984)). The Plaintiff alleges that by requiring the Plaintiff to sell the two set-aside units to private households, the IZ program constitutes a private taking of the Plaintiff's property. However, whether a taking is for a "private purpose" is not determined by the identity of the party to whom the state transfers the property, but "whether the City's development plan serves a 'public purpose.'" *Kelo v. City of New London, Conn.*, 545 U.S. 469, 480 (2005).

The Supreme Court has defined "public purpose" broadly, "reflecting [a] longstanding policy of deference to legislative judgments in this field." *Id.* For example, in *Midkiff* the Court considered a program by the state of Hawaii in which fee simple title to certain land was taken from lessors and transferred to the lessees, for just compensation. 467 U.S. at 233. The Supreme Court upheld the program as proper use of the state's eminent domain power despite the fact the program transferred title from one private party to another, noting that "it is only the taking's purpose, and not its mechanics, that must pass scrutiny under the Public Use Clause." *Id.* at 244; *see id.* ("The Act advances its purposes without the State's taking actual possession of the land."). Reaffirming a "deferential approach to legislative judgments in this field, [the Court]

concluded that the State's purpose of eliminating the 'social and economic evils of a land oligopoly' qualified as a valid public use." *Kelo*, 545 U.S. at 482 (quoting *Midkiff*, 467 U.S. at 241-42). Applying this deferential approach, this Court agrees that the IZ program's goal of increasing the geographic distribution of affordable housing is likewise a valid public use. D.C. Mun. Regs. tit. 11, § 2600.1. In fact, the Plaintiff conceded in the Complaint that the IZ program has the "laudable" goal of increasing homeownership opportunities for low and moderate income households and increasing the geographic distribution of affordable housing. Compl. ¶¶ 10-11. By the Plaintiff's own admission, the IZ program serves a public purpose, and thus does not constitute a private taking.

In the alternative, the Plaintiff argues it obtained a final administrative decision when the DHCD refused to waive the inclusionary zoning covenant. The Defendants argue the Plaintiff's efforts were insufficient because only the Board of Zoning Adjustments has authority to waive compliance with the IZ Program. The regulatory framework governing the IZ Program indicates both parties are correct: the Board of Zoning Adjustments is vested with the authority to waive the set-aside requirement, but the DHCD is charged with waiving any of the implementing regulations, including the inclusionary zoning covenant.

The Plaintiff appealed to the DHCD to waive the inclusionary zoning covenant, but the DHCD refused to do so, averring that it only had the authority to release the covenant in the event of a demolition or if the covenant needed to be corrected, but cannot as a general matter waive the covenant. Compl., Ex. B. at 1. The Defendants defends this decision, citing section 2223.1, which precludes DHCD from waiving any provision that is "required by the Zoning Commission's Inclusionary Zoning Regulations or the Inclusionary Zoning Act." D.C. Mun. Regs. tit. 14, § 2223.1(b). The Defendants explain that DHCD is only authorized to waive the

10

provisions set forth in title 14, chapter 22 of the D.C. municipal regulations, that is, the inclusionary zoning implementation regulations. Defs.' Mot. at 26. The set-aside and bonus density provisions are codified in title 11, chapter 26. The Defendants' interpretation of section 2223.1 is correct, but does not lead to the conclusion urged by the Defendants. The Plaintiff asked DHCD to waive the inclusionary zoning covenant, which, among other things, requires mortgagees to notify the District before initiating foreclosure proceedings and requires the mortgagee to sell the foreclosed unit through the IZ Program. Compl., Ex. A (inclusionary zoning covenant) §§ 5.7, 8.1-8.4. Neither the requirement that a covenant be executed, nor the provisions of the covenant, are dictated by the Inclusionary Zoning Act or the Zoning Commission regulations; both are established by DHCD's implementing regulations codified in title 14, chapter 22, and thus can be waived by the DHCD. The Plaintiff asked DHCD to waive the covenant and it refused, therefore the Plaintiff's claims with respect to the covenant are ripe. With respect to the Plaintiff's challenge to the set-aside requirement itself, the Plaintiff has not sought relief from the Board of Zoning Adjustments---the only body empowered to waive the set-aside requirement---meaning the Plaintiff's takings claim with respect to the set-aside requirement itself is not ripe.[2] Accordingly, the Court lacks subject matter jurisdiction over the Plaintiff's challenge to the IZ Program writ large, but can consider the Plaintiff's challenge to the inclusionary zoning covenant restricting the sale of the units in question.

B. *Adequacy of the Claims*

The Defendants also move to dismiss the Complaint for failure to state a claim, arguing that the Plaintiff failed to state a claim for a regulatory taking. "[W]hile property may be

---

[2] For this reason, the Court does not reach the Defendant's argument that the Plaintiff's facial challenge to the IZ program is time barred.

regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1014 (1992) (citation omitted). "[W]hether a particular restriction will be rendered invalid by the government's failure to pay for any losses proximately caused by it depends largely upon the particular circumstances [in that] case." *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978) (citation omitted). While engaging in this factual inquiry, the court considers a number of factors, including "[t]he economic impact of the regulation on the claimant," including "the extent to which the regulation has interfered with distinct investment-backed expectations," and the "character of the governmental action," for example, whether the state action can be characterized as a physical invasion of the property at issue. *Id.* at 124. However, the Supreme Court has held that certain discrete categories of regulatory actions are compensable "without case-specific inquiry into the public interest advanced in support of the restraint," for example, "[w]here regulation denies all economically beneficial or productive use of land." *Lucas*, 505 U.S. at 1015. The Defendants argue that under the *Penn Central* test, the Plaintiff failed to state a claim as a matter of law. The Plaintiff contends the IZ Program constitutes a total taking denying all economically beneficial use of the relevant property pursuant to *Lucas*, making the *Penn Central* test inapplicable.

The fundamental dispute between the parties is, when determining whether the District's regulation amounts to a taking of the Plaintiff's "property," whether the Court should consider the effect the IZ Program has on (1) the individual set-aside units, or (2) the twenty-two unit development as a whole. The Supreme Court recognized the difficulty of this inquiry in *Lucas*:

> Regrettably, the rhetorical force of our "deprivation of all economically feasible use" rule is greater than its precision, since the rule does not make clear the "property interest" against which the loss of value is to be measured. When, for example, a regulation requires a developer to leave 90% of a rural tract in its natural state, it is unclear whether we would analyze the situation as one in which

the owner has been deprived of all economically beneficial use of the burdened portion of the tract, or as one in which the owner has suffered a mere diminution in value of the tract as a whole.

*Lucas*, 505 U.S. at 1016, n.7. The answer "may lie in how the owner's reasonable expectations have been shaped by the State's law of property," that is, "whether and to what degree the State's law has accorded legal recognition and protection to the particular interest in land with respect to which the takings claimant alleges a diminution in (or elimination of) value." *Id.*

Ultimately the relevant "property" for purposes of this case is a fact-intensive inquiry. District of Columbia law provides that "[e]ach condominium unit shall constitute for all purposes a separate parcel of real estate, distinct from all other condominium units," D.C. Code § 42-1901.03, lending strong support to the Plaintiff's approach. None of the cases cited by the Defendants offer any useful guidance in determining the relevant parcel in this context. Therefore, for purposes of a motion to dismiss, the Plaintiff has sufficiently alleged that the IZ program constitutes a total taking of each of the two condominium units set aside by the Plaintiff, entitling the Plaintiff to compensation pursuant to the Supreme Court's decision in *Lucas*.

  C. *Miscellaneous Arguments*

The Defendant makes a two other arguments, un-tethered to its 12(b)(6) and 12(b)(1) motions, neither of which are persuasive. First, the Defendants contend that the Plaintiff failed to mitigate the economic effects of the IZ Program by either (1) transferring the set-aside units to another location; or (2) redesigning the development to include the bonus density. Whether the Plaintiff in fact could have benefited from either provision is a factual issue not appropriate for resolution upon a motion to dismiss. Decl. of A. Linde, ECF No. [14-1], ¶¶ 7-11, 16 (indicating that redesigning the development to include the bonus density was economically infeasible and

13

the Plaintiff had no other property to which it could transfer the set-aside units).

Second, for the first time in the reply, the Defendants argue that the Plaintiff failed to state a claim with respect to the alleged equal protection and due process violations. Although the Defendants argued these claims were not ripe, the Defendants did not move to dismiss these claims pursuant to Rule 12(b)(6) in their initial motion, therefore the Court declines to consider this argument. *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008) ("We need not consider this argument because plaintiffs . . . raised it for the first time in their reply brief."). Moreover the Defendants' argument relies on the same flawed arguments regarding ripeness and mitigation rejected elsewhere by the Court. *See* Defs.' Reply at 17-18.

## IV. CONCLUSION

For the foregoing reasons, the Court finds the Court finds the Defendants' motion to dismiss should be granted only in part. The Plaintiff obtained a final administrative decision with respect to waiver of the inclusionary zoning covenant when the Department of Housing and Community Development declined to waive the provision, but the Plaintiff failed to seek relief from the appropriate administrative body with respect to its challenge to the set-aside requirements of the IZ program generally. Moreover, the Plaintiff has sufficiently alleged a total taking of the two condominium units at issue for purposes of the present motion to dismiss. The Defendants' remaining arguments were either not properly raised or not amenable to disposition in the context of a motion to dismiss. Accordingly, the Defendants' [12] Motion to Dismiss is GRANTED IN PART and DENIED IN PART. An appropriate Order accompanies this Memorandum Opinion.

*/s/*
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE